UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARDAN CAPITAL MARKETS LLC,<br><br>Plaintiff,<br><br>v.<br><br>QUANTUM VENTURES LLC,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

Plaintiff Chardan Capital Markets LLC ("Chardan") alleges the following:

## NATURE OF THE CASE

1. Plaintiff brings this action to permanently enjoin defendant Quantum Ventures LLC ("Quantum" or "Defendant") from arbitrating a dispute against Chardan. Plaintiff is entitled to injunctive relief because the parties (the "Parties") agreed to submit "any" dispute concerning their business relationship described below to the exclusive jurisdiction of New York courts and do not have a contrary agreement to arbitrate, and because Defendant lacks a "customer" relationship with Plaintiff within the meaning of Rule 12200 of the Code of Arbitration Procedure of the Financial Industry Regulatory Authority ("FINRA") obligating Plaintiff to arbitrate this dispute.

2. On or about March 22, 2024, Defendant purported to file an arbitration with FINRA Dispute Resolution Services entitled *Quantum Ventures LLC vs. Chardan Capital Markets LLC*, FINRA Case No. 24-00663 (the "Arbitration") naming Plaintiff as the sole respondent. Plaintiff's response to the Arbitration is presently due on May 14, 2024.

3. Defendant does not allege any agreement between the Parties to submit disputes between them to arbitration, whether through FINRA or otherwise.

4. The Arbitration does not allege any other basis for arbitrating the dispute described therein.

5. Rule 12200 of the Code obligates Plaintiff, as a FINRA member, to arbitrate certain disputes with its "customers" under certain circumstances. But Rule 12200 does not obligate and has never obligated FINRA members to arbitrate disputes with *non*-customers.

6. The Arbitration does not allege that Defendant maintained brokerage accounts at Chardan or purchased any good or service from Plaintiff.

7. Instead, the Arbitration alleges two engagement letters (the "Engagement Letters") which contemplate an underwriting agreement (the "Underwriting Agreement") between Plaintiff and non-party Quantum Fintech Acquisition Corp. (the "Company")—not Defendant.

8. The Engagement Letters, however, definitively commit all disputes arising out of or related to the transactions described or contemplated therein to the exclusive jurisdiction of certain of New York's federal or state courts.

9. The Underwriting Agreement likewise does not entitle the Company, let alone Defendant, to arbitrate the dispute described in the Arbitration.

10. Accordingly, Plaintiff brings this action and seeks a declaration that it has no duty to arbitrate Defendant's claims and to permanently enjoin Defendant from proceeding with the Arbitration against Chardan.

11. Absent injunctive relief, Plaintiff will sustain immediate and irreparable harm for which it will have no adequate remedy at law as it will be forced to arbitrate the dispute set forth in the Arbitration in the absence of any agreement to arbitrate. Courts in this District routinely grant injunctive relief to prevent this type of harm and should do so here.

## PARTIES

12. Plaintiff is a New York limited liability company with its principal place of business in Greenwich, Connecticut. Plaintiff's members reside in Puerto Rico, New York, New Jersey, and Connecticut.

13. Defendant is a Delaware limited liability company with its principal place of business in Tampa, Florida. Defendant's members reside, upon information and belief, in Florida and Colorado.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims alleged in the Arbitration arise under the federal securities laws.

15. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship, as Plaintiff is a New York limited liability company with members who are citizens of Puerto Rico, New York, New Jersey, and Connecticut, while Defendant is a Delaware limited liability company with members who are citizens of Florida and Colorado.

16. This Court has personal jurisdiction over this dispute because the Parties irrevocably consented to this Court's jurisdiction in the Engagement Letters, and because a substantial part of the events giving rise to this action and the injuries complained of herein occurred in this jurisdiction.

17. Venue in this Court is proper because the Parties irrevocably consented to venue in this jurisdiction and waived any and all objections to venue in written agreements between them and because a substantial part of the events giving rise to this action and the injuries complained of herein occurred in the Southern District of New York.

## FACTUAL BACKGROUND

18. Defendant and Chardan executed the Engagement Letters in or around November 2020 and January 2021.

19. The Engagement Letters provide for Chardan to act thereunder as an "independent contractor with duties to the Company."

20. The Engagement Letters included a mandatory forum selection clause (the "Forum Selection Clause") which provides that:

> (i) . . . any legal suit, action or proceeding arising out of or relating to this Engagement Letter and/or the transactions contemplated hereby shall be instituted exclusively in New York Supreme Court, County of New York, or in the United States District Court for the Southern District of New York, (ii) [and that the Parties and the Company] waive any objection which it may have or hereafter to the venue of any such suit, action or proceeding, (iii) irrevocably consent to the jurisdiction of the New York Supreme Court, County of New York, and the United States District Court for the Southern District of New York in any such suit, action or proceeding, and (iv) waive all rights to a trial by jury.

21. The Engagement Letters memorialized the Parties' intent that Chardan and the Company—not Defendant—would enter a "definitive" underwriting agreement setting forth "all of the terms and conditions" governing the Company's initial public offering.

22. On February 4, 2021, Chardan and the Company—not Defendant—executed the Underwriting Agreement by which the Company agreed to issue and sell, and Chardan agreed to purchase, a certain number of units of the Company from the Company.

23. Defendant was not a party to the Underwriting Agreement.

24. The Engagement Letters and Underwriting Agreement contemplated a series of ancillary financial transactions related to the initial public offering, including the purchase of option units, the private placement of equity warrants, and certain "de-SPAC" business combinations, among other things (the "Ancillary Transactions"). The Ancillary Transactions are subject to the Forum Selection Clause.

25. Five days after Chardan and the Company executed the Underwriting Agreement, the initial public offering contemplated therein successfully closed on February 9, 2021.

26. Defendant initiated the Arbitration with FINRA on or about March 22, 2024, seeking over $9,000,000 in compensatory and other damages.

27. On or about March 25, 2024, FINRA notified Chardan that it was named as a respondent in the Arbitration and directed Chardan to file its answer to the Arbitration by no later than May 14, 2024.

28. The Arbitration alleges violations of federal law, FINRA and U.S. Securities and Exchange Commission requirements, and common law arising out of and related to the transactions contemplated by the Engagement Letters, including the Ancillary Transactions.

29. The Arbitration alleges that Chardan Quantum LLC ("CQL"),[1] a co-sponsor of the Company, engaged in various forms of misconduct concerning proposed "de-SPAC" business combinations involving third parties, including AtlasClear Holdings, Inc. ("AtlasClear"), between November 2021 and February 2024.

30. While the Arbitration alleges misconduct concerning CQL's alleged actions and omissions as an equity investor and co-sponsor of the Company, those allegations do not implicate Chardan's business activities as a broker-dealer.

31. Defendant does not allege any arbitration agreement, written or otherwise, between Defendant and Chardan.

---

[1] Likely to bolster its dubious claim that this dispute is arbitrable, Defendant's allegations obscure—or ignore altogether—the distinctions between Chardan and CQL on the one hand and the Company and Defendant on the other. In this Complaint, Plaintiff separates and identifies the specific entities that Defendant conflates in the Arbitration.

32. Rule 12200 of the Code requires FINRA members to arbitrate certain disputes with customers when "requested by [a] customer."

33. Courts in this District define "customer" under Rule 12200 of the Code to be one who purchases goods or services from or has an account with a FINRA member and routinely enjoin FINRA arbitrations where the defendant's allegations do not involve a brokerage account with the plaintiff or relate to the purchase of goods or services from the plaintiff.

34. Defendant does not allege any brokerage account with, or any purchases of goods or services from, Chardan as a broker-dealer.

35. Chardan requires the relief sought herein to enjoin the Arbitration before FINRA. Chardan did not consent to arbitrate claims arising from or related to transactions contemplated by the Engagement Letters and will be imminently and irreparably harmed without an injunction.

36. In contrast, Defendant will suffer no harm or prejudice if this Court grants Chardan's requested relief.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

37. Chardan repeats the foregoing allegations as if fully set forth herein.

38. The Parties agreed that "any" dispute between them arising under or related to the transactions described in or contemplated by the Engagement Letters must be instituted exclusively in certain New York courts, including this Court.

39. The dispute described in the Arbitration is subject to the mandatory Forum Selection Clause in the Engagement Letters.

40. Chardan has no written agreement to arbitrate this dispute with Defendant.

41. Defendant is not a "customer" of Chardan and is not entitled to arbitrate this dispute under Rule 12200 of the Code.

42. Declaratory relief is appropriate because the dispute between Chardan and Defendant is concrete and imminent.

43. Chardan respectfully requests the Court to declare that the Arbitration may not be arbitrated against Chardan and that Chardan has no obligation to submit to the Arbitration.

**SECOND CLAIM FOR RELIEF**
**(Injunctive Relief)**

44. Chardan repeats the foregoing allegations as if fully set forth herein.

45. Chardan has no agreement, written or otherwise, to arbitrate the dispute described in the Arbitration with Defendant.

46. Defendant is not a "customer" of Chardan and is not entitled to arbitrate the dispute described in the Arbitration under Rule 12000 of the Code.

47. Chardan will suffer immediate and irreparable harm if it is forced to arbitrate claims that it did not agree and is not obligated to arbitrate.

48. Chardan has no adequate remedy at law.

49. The balance of the equities favors enjoining the Arbitration.

50. The public interest will be served by enjoining the Arbitration.

51. Accordingly, Chardan respectfully requests that the Court enjoin Defendant from arbitrating the claims set forth in the Arbitration against Chardan.

**PRAYER FOR RELIEF**

WHEREFORE, Chardan respectfully requests that the Court:

(a)     Declare that Chardan has no obligation to arbitrate claims with Defendant, including those alleged in the Arbitration;

(b)     Enjoin Defendant from arbitrating the Arbitration or any related claims against Chardan; and

(c)     Order any other relief that the Court believes is just and proper.


Dated:  April 25, 2024

**KATTEN MUCHIN ROSENMAN LLP**


*/s/ David L. Goldberg*
David L. Goldberg
50 Rockefeller Plaza
New York, New York 10020
Phone: (212) 940-8800
david.goldberg@katten.com
*Attorney for Chardan Capital Markets LLC*